UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
ANGELO RUOTOLO,                                           :           03 Civ. 5045 (SHS)
                                                          :
                Plaintiff,    :           OPINION & ORDER
                                                          :
       -against-                                         :
                                                          :
CITY OF NEW YORK; RAYMOND KELLY,                          :
Commissioner of Police, City of New York;                 :
PATRICK TIMLIN, former Chief of Police,                   :
City of New York, Bronx; ANTHONY IZZO,                    :
Chief of Police, City of New York, Bronx;                 :
RAYMOND ROONEY, Deputy Inspector, New                     :
York City Police Department, formerly                     :
Commanding Officer, 50th Precinct, Bronx;                 :
WILLIAM RILEY, Lieutenant, New York City                  :
Police Department, formerly Integrity Control             :
Officer, 50th Precinct, Bronx; THOMAS DiRUSSO,            :
Deputy Inspector, 50th Precinct, New York City            :
Police Department, Bronx; PHILLIP WISHNIA,                :
Lieutenant, 41st Precinct, New York City Police           :
Department, Bronx,                                        :
                   Defendants.   :
                                                          :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Angelo Ruotolo, a retired New York City Police sergeant, brings this action against a number of individual officers of the New York City Police Department ("NYPD"), alleging that they subjected him to acts of retaliation after he gave his commanding officer a memorandum outlining possible environmental risks at his police precinct.[1] Ruotolo also asserts a claim against the City of New York pursuant to Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). He brings both claims pursuant to 42 U.S.C. §

---

[1] Ruotolo has withdrawn his claim against Police Commissioner Raymond Kelly.

1983 for violations of his rights under the First and Fourteenth Amendments to the United States Constitution.

Although the Court previously denied motions to dismiss the complaint and for summary judgment in this action, defendants have now renewed their motion to dismiss in light of the recent decision by the United States Supreme Court in Garcetti v. Ceballos, 547 U.S. ___, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (May 30, 2006). In that action, heretofore unexamined in this circuit, the Supreme Court determined that the First Amendment does not protect a government employee "from discipline based on speech made pursuant to the employee's official duties." 126 S. Ct. at 1955. Because Ruotolo prepared his report pursuant to his official duties as his precinct's Command Safety Officer, the First Amendment does not protect that speech. The complaint is therefore dismissed on the basis of Garcetti.

## I. BACKGROUND

This motion comes before the Court on the cusp of trial after three years of litigation, during which the parties beat a steady tattoo of motions for resolution by the Court. Among other matters, the Court ruled on a previous motion to dismiss the complaint as well as a motion for summary judgment, a motion to amend the complaint, various discovery motions and motions for reconsideration, as well as a motion to bifurcate the Monell claims from the claims against individual police officers. On May 30, the day the parties submitted the final Joint Pretrial Order, and with the trial only two weeks away, the U.S. Supreme Court issued its decision in Garcetti v. Ceballos. Defendants immediately renewed their motion to dismiss and the Court adjourned the trial pending resolution of this motion.

The following facts, relevant for the purposes of this motion, are taken from the complaint and are accepted as true. See Kirch v. Liberty Media Corp., 449 F.3d 388 (2d Cir.

2006). At the time the events giving rise to this action took place, Ruotolo had been an officer with the NYPD for 20 years and was serving as the Training and Safety Officer of the 50th Precinct in the Bronx, New York City. (Second Amended & Supplemental Complaint ("Amend. Compl.") ¶¶ 16-17.) "[I]n his capacity as safety officer," the complaint alleges, Ruotolo wrote a report identifying possible environmental risks at the precinct (the "Report"). (Id. ¶ 18.) In the Report, Ruotolo identified possible air and water contamination caused by spills from precinct gasoline storage tanks. He also listed a number of health problems reported in the precinct that, he suggested, could be linked to the contamination. (Id. ¶ 19.) The Report was dated October 28, 1999 and delivered to Ruotolo's commanding officer. (Id.) The complaint alleges that Ruotolo "asked, as Command Safety Officer," for a thorough environmental evaluation of the 50th Precinct. (Id. ¶ 20.) The precinct's environmental issues received publicity in several newspapers. At some point after Ruotolo submitted his report, the City of New York allegedly abated the hazard. (Id. ¶¶ 21-24.)

Ruotolo alleges that after he submitted his Report, he began to suffer a pattern of retaliatory acts by his superiors. For example, he was denied requested time off, stripped of his assignment as Training and Safety Officer, reassigned to lower-status patrol work, administratively transferred to a less desirable precinct and disciplined for allegedly trivial and fabricated reasons. (Id. ¶¶ 26-34.) Ruotolo claims that the pattern of retaliation worsened after he filed this action. (Id. ¶¶ 44-45.) Moreover, he received his first poor performance evaluation in 20 years on the job, was placed on "modified duty" and was stripped of his badge and right to carry a weapon for an allegedly minor infraction of NYPD rules. (Id. ¶¶ 44-52, 59.) Ruotolo ultimately applied for retirement, because he believed that the NYPD was attempting to force

3

him to leave, and that if he did not retire voluntarily, his retirement with benefits would be jeopardized. (Id. ¶¶ 67-70.)

Ruotolo brought this action on July 8, 2003, claiming violations of his First and Fourteenth Amendment rights in that he was retaliated against for exercising his right to engage in free speech about a matter of public interest "that, as Safety Officer, was critical to the welfare of his colleagues and the public." (Id. ¶¶ 55.)

## II. ANALYSIS

### A. Legal Standards

(1) Motion to Dismiss the Complaint

A court may grant a motion to dismiss the complaint only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 L. Ed. 2d 80 (1957)) (internal quotation marks omitted). In reviewing a motion to dismiss, a court must accept as true the factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff and construe the complaint liberally. See Weinstein v. Albright, 261 F.3d 127, 131 (2d Cir. 2001); Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).

(2) The Scope of First Amendment Speech as Recently Construed by the Supreme Court

The United States Supreme Court clarified in Garcetti v. Ceballos, 547 U.S. ___, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (May 30, 2006), that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 126 S. Ct. at 1960. In other words, the First Amendment does not protect a

government employee "from discipline based on speech made pursuant to the employee's official duties." 126 S. Ct. at 1955. In <u>Garcetti</u>, a supervising calendar deputy named Richard Ceballos in the Los Angeles district attorney's office was responsible for investigating aspects of pending cases, including, at times, investigating the accuracy of search warrants and supporting affidavits. Although Ceballos prepared and submitted to his employer a memorandum that expressed concerns with the accuracy of several facts presented in an affidavit and that recommended dismissal of the case, the district attorney elected to prosecute the case despite these objections; the trial court also rejected challenges to the warrant.

Ceballos then sued the District Attorney pursuant to 42 U.S.C. § 1983, alleging that in the aftermath of this event he was subjected to a series of retaliatory employment actions, including transfer to another courthouse and denial of a promotion. <u>Id.</u> at 1955-56. The district court granted District Attorney Garcetti's motion for summary judgment. The United States Court of Appeals for the Ninth Circuit reversed, ruling that "Ceballos' allegations of wrongdoing in the memorandum constitute[d] protected speech under the First Amendment" because allegations of governmental misconduct are "inherently a matter of public concern." <u>Id</u>. at 1956-57. The Ninth Circuit did not consider whether Ceballos spoke in his capacity as an employee or as a citizen. <u>Id.</u>

The U.S. Supreme Court reversed the Ninth Circuit, holding that Ceballos' memo was not protected speech under the First Amendment because it was made "pursuant to his duties as a calendar deputy." <u>Id.</u> at 1959-60. The Court explained that excluding speech made pursuant to a public employee's duties from within the scope of protected First Amendment speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." <u>Id.</u> at 1960. If a public employee is charged with speaking or writing on a given topic,

the Court reasoned, the fact that the topic is of public import does not shield the employee from "managerial discipline" based on that employee's work product. Id.

**B. First Amendment Retaliation Claim**

(1) The Report

Ruotolo prepared his environmental risk Report pursuant to his duties as the precinct Command Safety Officer. Both the initial and the amended complaints aver that Ruotolo, "in his capacity as Safety Officer," wrote a report identifying possible environmental risks in the 50th Precinct. (Compl. ¶ 16; Amend. Compl. ¶ 18.) Ruotolo's Report itself sets forth that it was "submitted pursuant to Interim Order 45, dated 10-19-99, wherein the Training Sergeant is designated the Command Safety Officer on matters relating to occupational safety." (See Ex. B to June 2, 2006 letter of James M. Lemonedes.) In addition, the text of the Report identifies it as an employer-commissioned work, since the "subject" line of the Report reads, "Survey Pursuant to Request" and the second paragraph explains that "Detective Andrea Brown has submitted an 'Employee Information Request' for a survey relating to numerous unexplained maladies" at the precinct; the Report then delineates the results of the requested survey. (Id.) It is clear beyond peradventure that the Report was prepared as part of plaintiff's official duties.

Since Ruotolo prepared his Report in the course of his employment duties, his speech is exactly the type addressed in Garcetti; i.e., employer commissioned work over which the employer is entitled to exercise control. Because Ruotolo spoke as a public employee when he prepared this report, he was "not speaking as [a] citizen[] for First Amendment purposes," Garcetti, 126 S. Ct. at 1960, and has no First Amendment claim for adverse employment actions he may have suffered as a consequence of this work.

(2) Conversations Concerning the Report

Ruotolo contends that his First Amendment claim remains after <u>Garcetti</u> on the basis of other protected speech. He asserts that there are instances where he spoke about the health issues contained in the Report as a citizen rather than as a public employee, and that this speech is protected First Amendment speech for which he cannot suffer retaliation. Specifically, Ruotolo explains that he met with Police Benevolent Association ("PBA") lawyers who came to the precinct to interview officers about the environmental contamination. He also claims that he testified at his deposition in this action that the PBA lawyers solicited officers to join a lawsuit against the City regarding the contamination, and asked to speak with Ruotolo specifically. One PBA lawyer allegedly asked Ruotolo questions about the Report, telling Ruotolo that he was there in response to the Report. Ruotolo claims that in his discussions with the PBA attorney he was no longer communicating in his official capacity as Safety Officer, but rather as a public citizen acting on a health matter of public concern.

As a preliminary matter, neither the original nor the second amended and supplemental complaint cite conversations with PBA lawyers as a basis for Ruotolo's claims; indeed, the complaints fail to even mention these conversations. Rather, as Ruotolo acknowledges, the fact that he conversed with PBA lawyers regarding his Report came to light for the first time during his deposition in this litigation. Thus, these PBA conversations are outside the pleadings and not properly before the Court on this motion to dismiss. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002); <u>In re Alcatel Sec. Litig.</u>, 382 F. Supp. 2d 513, 521 (S.D.N.Y. 2005).

Even were the Court to consider these conversations, Ruotolo's First Amendment claim would fail. The facts, as set forth in Ruotolo's submission in opposition to this motion to dismiss, clearly indicate that Ruotolo spoke with the lawyers in his capacity as Command Safety

7

Officer. Ruotolo acknowledges that the PBA lawyers specifically asked for him because he wrote the Report. In speaking with the lawyers, Ruotolo discussed the product that he had produced pursuant to his duties as Command Safety Officer. He was thus satisfying the same duty he discharged in preparing the Report, that is, answering concerns by or on behalf of police officers about health issues at the 50th Precinct.

Indeed, both the Report and the complaint in this action identify Ruotolo as the Command Safety Officer "on matters relating to occupational safety"; Ruotolo was clearly the individual charged with answering questions about safety issues at the precinct. And there is no indication that Ruotolo communicated with the PBA lawyers in anything other than his official capacity. He did not allege, for instance, that he signed up to join the PBA lawsuit, or that he spoke with the lawyers outside of the precinct premises. When a public employee goes "to work and perform[s] the tasks he [i]s paid to perform," that employee acts as a governmental employee and his speech is not protected by First Amendment. Garcetti, 126 S. Ct. 1960. Ruotolo has failed to state a claim for First Amendment retaliation on the basis of conversations with the PBA lawyers, even if those conversations had been asserted in the complaint.

(3) The Lawsuit

Ruotolo also continues to press his claim that this lawsuit is itself protected First Amendment speech. However, because this action does not state a claim for First Amendment retaliation, the lawsuit does not itself constitute protected speech and Ruotolo has no claim for retaliation for his filing of it.

Prior to Garcetti, a plaintiff had a valid claim for retaliation on the basis of a lawsuit when "the subject of the lawsuit . . . touch[ed] upon a public concern." Konits v. Valley Stream Cent. High School Dist., 394 F.3d 121, 124 (2d Cir. 2005) (citing Cobb v. Pozzi, 363 F.3d 89,

8

105-6 (2d Cir. 2003)). In a previous decision in this case on a motion to reconsider her decision denying a motion to supplement the complaint, Magistrate Judge Debra Freeman found that Konits "strongly suggests that where a lawsuit is 'predicated' on speech that is plainly a matter of public concern (in other words, where a lawsuit adequately charges a First Amendment retaliation claim), the lawsuit itself, seeking redress for the First Amendment violation, should be deemed to constitute speech on a matter of public concern as well." Ruotolo v. City of New York, No. 03 Civ. 5045, 2005 U.S. Dist. LEXIS 13738, at *7-8 (S.D.N.Y. July 11, 2005). Because the Magistrate Judge found that the complaint in this action "constitute[] speech on a matter of public concern," she granted the motion for reconsideration and ruled that Ruotolo could supplement his complaint to add a claim based on retaliation against him for filing this lawsuit. Id. at *9.

After Garcetti, the analysis is different. Konits did not distinguish speech made by an employee acting *qua* employee from that made as a citizen. Instead, the Konits test enquired whether "(1) [a public employee's] speech addressed a matter of public concern, (2) she suffered an adverse employment action, and (3) a casual connection existed between the speech and the adverse employment action." Konits, 394 F.3d at 124 (citing Cobb, 363 F.3d at 102), which was the appropriate analysis prior to the Supreme Court decision in Garcetti. Garcetti requires a separate inquiry; namely, whether a public employee's speech was made in the employee's capacity as a citizen. After Garcetti, for a lawsuit adequately to charge a First Amendment retaliation claim, the lawsuit must be predicated on speech made by a public employee *as* a citizen, and not pursuant to his or her official duties. To hold otherwise—that filing a lawsuit alleging retaliation for non-protected speech would give rise to a First Amendment complaint— would defy logic, allowing a plaintiff to bootstrap a non-actionable objection to legitimate

9

employer discipline into a valid First Amendment claim. In sum, because Ruotolo has no First Amendment claim for retaliation based on his preparation of the Report or his discussions with PBA lawyers, no First Amendment claim arose when he filed this action seeking redress for retaliation on the basis of that unprotected speech.

## C. Due Process Claim

Ruotolo claims he was denied due process of law when he was retaliated against on the basis of the Report. His claim is not that he was stripped of a liberty or property right, but that by retaliating against him, his superiors chilled his free speech under the First Amendment. Because Ruotolo premised his due process claim solely on his First Amendment claim and he has no valid First Amendment claim, his due process claim also fails.

## III. CONCLUSION

Defendants' renewed motion to dismiss the complaint is granted and the complaint is dismissed.

Dated: New York, New York
July 19, 2006

SO ORDERED:

Sidney H. Stein, U.S.D.J.

10